IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICA S/A FRUTAS E ALIMENTOS ET AL. | : : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| M/V CAP SAN RAFAEL, ET AL. | : | |
| Defendants. | : | NO.  03-2360 |
| AMERICA S/A FRUTAS E ALIMENTOS ET AL. | : : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| M/V CAP SAN RAFAEL, ET AL. | : | |
| Defendants. | : | NO.  03-2361 |
| AMERICA S/A FRUTAS E ALIMENTOS ET AL. | : : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| M/V CAP SAN RAFAEL, ET AL. | : | |
| Defendants. | : | NO.  03-2362 |
| GUARARAPES AGRICOLA S.A., ET AL | : : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| M/V CAP SAN RAFAEL, ET AL. | : | |
| Defendants. | : | NO.  03-4624 |

**MEMORANDUM AND ORDER**

**Stengel, J.**                                                                                                                      **April 12, 2006**

**I.        Factual Background**

These related admiralty cases all involved the shipment of mangoes from the port of Suape, Brazil to Philadelphia, Pennsylvania over the course of four months in 2002.  The plaintiffs, America Frutas e Alimentos, Timbauba Agricola, and Tropicool ("Plaintiffs") are shippers of mangoes.  They contracted with defendants Compania Sud Americana de Vapores S.A.,  Companhia Libra de Navegacao, Hamburg

Sudamerikanische, and Columbus Shipmanagement (collectively "CSAV" or "Defendants") to transport a series of shipments of mangoes on the M/V CAP San Raphael to North America. The mangoes that are the subject of these lawsuits were transported on voyages 3N, 4N and 5N from Suape, Brazil to Blackwood, New Jersey.[1]

Defendants are party to a series of agreements in which they share vessel space (in this case on the M/V CAP San Raphael) to enable bi-weekly trips between the east coasts of North and South America. Plaintiffs are shippers and consignees of mangoes grown in Brazil and shipped to North America for consumption. Plaintiffs and Defendants entered into an agreement providing for regularly scheduled transport between Brazil and the United States. The three voyages at issue here - 3N, 4N and 5N - were scheduled to leave Suape on August 7, 2002, September 18, 2002 and October 31, 2002 respectively. The approximate travel time between Suape and Philadelphia was 194 hours, and the carrier was scheduled to arrive at the Port of Philadelphia on August 18, 2002, September 28, 2002 and November 9, 2002. However, voyage 3N left Suape on August 11, 2002, arriving on August 23, 2002, voyage 4N left on September 23, 2002 and arrived on October 3, 2002, and voyage 5N left on November 3, 2002 and was delivered on November 18, 2002. The shipments therefore arrived in Philadelphia five, five and nine days late, respectively.

---

[1] Though the maritime shipment ended in Philadelphia, the ultimate point of destination was Blackwood, NJ. Admiralty law controls until the cargo reaches its ultimate destination, but the manner in which the mangoes were transported from Philadelphia to Blackwood, NJ, the final destination, is not in dispute.

According to Plaintiffs, despite the delay, the mangoes were delivered to the port for shipping on the originally agreed date - i.e. one day prior to the scheduled departure. Plaintiffs further allege that the mangoes were delivered for shipping in good condition. As a result of the delay in the voyage, and possibly as a result of Defendants' negligent storage of the mangoes onboard the M/V CAP San Raphael, Plaintiffs allege that the mangoes were delivered in an overripe and damaged condition. They have sued for damages due to the delay and subsequent reduced market value of the mangoes. Defendants have variously moved for summary judgment, arguing that they are contractually immune from liability for delay; that if they are liable, the delay was commercially reasonable and that they cannot be held liable for any damage; and that even if they are liable, their monetary liability is limited to $500 per "package" by the Carriage of Goods By Sea Act ("COGSA"), 46 U.S.C. § 1300, *et seq*.

## II.      Legal Standard[2]

The court has subject matter jurisdiction based upon a question of federal law, pursuant to 28 U.S.C. § 1331. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The treatment of motions for summary judgment under COGSA is the same as a similar motion in any

---

[2] There is very little Third Circuit law on admiralty disputes. It appears that the standard practice in admiralty disputes is to cite to whatever Circuit law is available, regardless of which Circuit's law would normally control. I make my findings in accordance with that practice.

3

other type of litigation. *Transatlantic Marine Claims Agency, Inc. v. M/V OOCL Inspiration*, 137 F.3d 94, 101 (2d Cir. 1998). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party. *Liberty Lobby,* 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Id.* at 252. If the non-moving party has exceeded the

mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

**III.     Discussion**

        A.     The Contracts

There is some dispute as to which shipping documents control in this case. The three relevant sets of documents are the Service Agreement, the Sea Waybills and the carriers' tariffs.[3] Defendants argue that the Sea Waybill and tariffs, standing alone, control this dispute. Plaintiffs agree that those two documents control, but argue that the Service Confirmation, which detailed the timing and conditions of the carriage, also controls.

On their face, the Sea Waybills control when there is a conflicting clause between different contracts. Waybills ¶ 6. Here, Defendants argue that the clause in the Sea Waybill disclaiming "delay damages"[4] conflicts with the timing set forth in the

---

[3] A "tariff" is an admiralty term of art. In this context, a tariff is a "rate schedule established by two or more carriers covering shipments between places requiring the use of facilities owned by those carriers." BLACK'S LAW DICTIONARY (8th ed. 2004).
    Normally, a bill of lading is the controlling shipping document in international admiralty disputes. Here, the parties chose to use a sea waybill rather than a traditional bill of lading. A bill of lading is a type of waybill, and COGSA applies equally to sea waybills as to bills of lading. *See generally* THOMAS J. SHOENBAUM, ADMIRALTY AND MARITIME LAW § 10-11 (3d ed. 2001). I will use the terms "waybill" or "sea waybill" and "bill of lading" interchangeably for purposes of the COGSA analysis.

[4] Defendants appear to argue that "delay damages" mean any consequential damages that result from a delay in delivery. As discussed in more detail *supra*, I find that the meaning of delay damages is specifically those that are attributable solely to delay, and that any damages that was merely exacerbated by the delay are not included in that definition.

5

Booking Confirmation, and that the carriage agreement as embodied in the Waybill supercedes any and all conflicting agreements. They further argue that even if the clauses were not conflicting, the Booking Confirmation was not binding to begin with, and therefore should not be considered. Plaintiffs argue that the Booking Confirmation evidences a contract term above and beyond what was enumerated in the Waybill, and that therefore the times listed on it should be considered evidence of delay.

I agree with Defendants, and find that the Waybill is the controlling document here. Basic contract law disallows extrinsic evidence where the contract in dispute is integrated and where there is an absence of ambiguity, mistake or fraud. *See Harley-Davidson, Inc. v. Morris*, 19 F.3d 142 (3d Cir. 1994); *Martin v. Berens*, 67 Pa. 459 (1871). As there is no indication of mistake or fraud by the parties, or of any ambiguity in the Sea Waybill, I find that the Waybill (and associated tariffs) controls this dispute.

B.   Burdens under COGSA

Admiralty disputes are governed by the Carriage of Goods By Sea Act.[5] This law is essentially a codification of international treaties, and it applies to all disputes arising out of navigable waters. It was specifically designed for international voyages, but has been extended to some domestic maritime claims as well.

---

[5] Plaintiff argues that the Harter Act, 46 U.S.C. App. §§ 190-196 applies to this dispute. COGSA, however, explicitly preempts the Harter Act for disputes over international trade. 46 U.S.C. app. § 1312. As this case involves transport between Brazil and the United States, and because all of the allegations concern events that occurred while the cargo was loaded on the ship, COGSA controls. It is undisputed that COGSA is otherwise the controlling law.

6

As the Eleventh Circuit has noted, under the complex statutory scheme, "[t]he burden of proof under COGSA shifts more frequently than the wind on a stormy sea." *Banana Servs., Inc. v. M/V Fleetwave*, 911 F.2d 519 (11th Cir. 1990). Under COGSA, if a plaintiff shipper can prove its *prima facie* claim that (1) the cargo was loaded undamaged onto the carrier's ship; and (2) the cargo was damaged when it was unloaded from the ship at the point of destination, then the burden shifts to the carrier to prove the damage was not caused by its negligence, and was due to one of a number of enumerated COGSA exceptions.[6] 46 U.S.C. App. §§ 1303, 1304. The carrier can then rebut the *prima facie* case by showing that the damage was due to an excepted cause or that it exercised due diligence.[7] If the carrier meets this heavy burden, then the burden

---

[6] That the cargo was delivered in an undamaged state can be proved by a clean bill of lading. 46 U.S.C. App.§§ 1303(c)(3). Similarly, that it was unloaded in a damaged state can be proven by a survey or inspection report.

[7] In relevant part, COGSA provides that:
Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from -
    (a) Act, neglect, or default of the master, mariner, pilot, or the servants of the carrier in the navigation or in the management of the ship;
* * *
    (c) Perils, dangers, and accidents of the sea or other navigable waters;
* * *
    (m) Wastage in bulk or weight of any other loss or damage arising from inherent defect, quality, or vice of the goods;
* * *
    (q) Any other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier, but the burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage.
46 U.S.C. App. § 1304(2)(a), (c), (m) and (q).

7

returns to plaintiff to establish that the carrier negligently cared for the cargo, that the vessel was unseaworthy, or that the carrier did not use due diligence to make the vessel seaworthy, and that these were at least a concurrent cause of the loss. *See Sun Col, Inc. v. S.S. Overseas Arctic*, 27 F.3d 1104 (5th Cir. 1994); *Lekas & Drivas, Inc. v. Goulandris*, 306 F.2d 426 (2d Cir. 1962). The carrier must then, in turn, demonstrate that it exercised due diligence in shipping the cargo.[8] Where the burden shifts back to the carrier, and the cargo damage was due in part to the carrier's negligence and in part to inherent defect and the carrier fails to establish exactly how much loss is attributable to each cause, the carrier is liable for the entirety of damages. *See, e.g. Schnell v. The Vallescura*, 293 U.S. 296 (1934); *Vana Trading Co. v. S.S. Mette Skou* 556 F.2d 100 (2d Cir. 1977); *see also C.Itoh & Co. (America), Inc. v. M/B Hans Leonhardt*, 719 F. Supp. 479, 502-3 (E.D. La. 1989).

Taken in the light most favorable to the non-moving party, Plaintiffs have proved that the mangoes were undamaged when loaded onto the ship in Suape, but were in a damaged condition when delivered. *See* Waybill; USDA Report. Thus, the burden shifts to Defendants to prove that the damage was due to an excepted cause. As discussed further below, Defendants argue that they are immune from any liability due to delay. I find that as a result of their obligations under COGSA, as well as simple contractual obligations, Defendants may be liable for the damage sustained by the mangoes as a result

---

[8] A showing of both an excepted cause and due diligence is required under Second Circuit law. *See, e.g., United States v. Ultramar Shipping Co.*, 685 F. Supp. 887, (S.D.N.Y. 1987); *accord C.Itoh & Co. (America) v. M.V Hans Leonhardt*, 719 F. Supp. 479, 504 (E.D. La. 1989). Some courts, however, have held that in order to rebut a *prima facie* case, the Defendant carrier need only show either an excepted cause or due diligence. *See, e.g. Banana Servs.,* 911 F.2d at 521.

of the delayed arrival at Philadelphia. I further find that the cause of the damage to the mangoes is a disputed material fact, and that therefore this matter is not appropriate for disposal on summary judgment.

      C.      Motion for Summary Judgment in Case 03-2361

Defendants have filed a separate Motion for Summary Judgment in case number 03-2361, involving Voyage 3N, which sailed in August 2002. Defendants allege that Plaintiffs have not alleged a *prima facie* case, and that even if they had, their failure to give notice of the damaged mangoes constitutes a bar to this action. COGSA, 46 U.S.C. App. § 1303(6), paragraph 20(1) of the Sea Waybill, and Rule Number 008(17) of the CSAV tariff all impose a duty upon the shippers to notify the carrier promptly if the delivered goods are damaged. Notice of damage bolsters a shipper's *prima facie* case, but is not necessary. *Pac. Employers Ins. Co. v. M/V Gloria*, 767 F.2d 229, 238 (5th Cir. 1985). Where a shipper presents other evidence that the cargo was damaged upon delivery, the evidence of lack of notice is given no particular weight. *Id.*

Thus, despite evidence that Plaintiffs failed to notify Defendants of the defective mangoes, I find that the evidence presented by Plaintiffs of the FDA inspection is sufficient to establish a *prima facie* case under COGSA.

      D.      Liability for Delay

Defendants argue that as a matter of law they are not liable for any damage to the mangoes due to the delay in delivery to Philadelphia. They point to paragraph 18(4) of the Sea Waybill, as well as to Rule 008(2) of the Compania Sud Americana de Vapores S.A. tariff and Rule 8.E(5)(2) of Companhia Libra De Navegacao's tariff, which

expressly disclaim any liability for delay damages, as well as a number of cases upholding the validity of such clauses. Plaintiffs point to the same documents, as well as Booking Confirmations provided by Defendants prior to the shipping of the cargo.

On the face of the Sea Waybill, Defendants have disclaimed any liability for damages due to delay. Parties to a maritime contract are free to contract away liability for delay. *See, e.g., Hellenic Lines, Ltd. v. Director Gen. of India Supply Mission*, 319 F. Supp. 821, 831 (D.C.N.Y. 1970) ("when the parties choose, they may contract out of any liability for delay in discharge."). Plaintiffs have failed to allege that the Sea Waybill was procured through fraud or mistake, and therefore have not shown that extrinsic evidence is necessary to determine the intent of the parties in executing the tariff and waybill. As a result, I find that any damage to the mangoes due solely to delay is not recoverable by Plaintiffs. However, as a carrier may not disclaim liability for failure to comply with the duties enumerated under COGSA, Defendants may still be liable for damage due to negligence.

Insofar as Defendants were under an obligation to "[m]ake the holds, refrigerating and cooling chambers . . . fit and safe for their reception, carriage, and preservation," 46 U.S.C. App. § 1303(1)(c), and to "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried," 46 U.S.C. App. § 1303(2), I find that Plaintiffs have raised an issue of material fact as to whether Defendants complied with these obligations. Therefore, I will grant the Motion for Summary Judgment as to "delay damages," but not as to liability because I find that there is a

genuine issue of material fact as to whether Defendants' negligence led to the deterioration of the mangoes upon delivery.

      E.      $500 Liability Limit under COGSA

Defendants further move for summary judgment on the issue of amount of potential liability under COGSA. COGSA sets an explicit liability limit for carriers of $500 per "package" of goods, unless otherwise specified. Defendants argue that the cartons in which the mangoes were shipped (as opposed to the cartons in which they were packaged) were the COGSA "packages," while Plaintiffs argue that the cartons or pallets are the appropriate measure of damages. The difference is significant, as only thirty-five containers were shipped ($17,500 in damages under COGSA), but those containers included 177,453 cartons ($88,726,500 in potential damages) or at least 682 pallets[9] ($341,000 in potential damages). For the reasons outlined below, I will grant Defendants' Motion for Summary Judgment on this issue in part and deny it in part.

      Section 1304(5) of COGSA states:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

---

      [9] Some of the Sea Waybills do not include pallet information, so this number includes only the enumerated pallets.

46 U.S.C. App. § 1304(5). The Sea Waybills incorporate COGSA, and explicitly incorporate this $500 limit in paragraph 18(1).

Here, the Sea Waybills do not indicate an amount exceeding $500 per package - the contract is left blank in the space allowing for a larger amount designation. Under the heading "NO. OF PKGS/CNTRS," the Sea Waybills uniformly list the number of containers, and the number of cartons and pallets are listed under the heading "DESCRIPTION OF PACKAGES AND GOODS." The Eleventh Circuit has squarely addressed this issue, in *Groupe Chegaray de Chalus v. P & O Containers*, 251 F.3d 1359 (11th Cir. 2001). In *Groupe Chegaray*, a shipper of perfumes and cosmetics packed their cargo into 2,270 cartons, which were then consolidated onto 42 pallets, with two cartons remaining. The bill of lading indicated "4" under the heading "packages," but went on to find that "the 42 pallets, described as 'packages' in the bill of lading, plus the two cartons, represent the accurate number of COGSA packages," because they were specifically described under the "description of goods" section of the bill of lading. *Id*. at 1368.

Further, since the early 1980s, courts have uniformly held that where the shipper endeavors to bundle the goods, that the unit in which they were bundled represents the COGSA package. *See, e.g. Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam*, 759 F.2d 1006, 1013 (2d Cir. 1985) ("when the bill of lading discloses not only the number of containers by the number of cartons within them, the cartons, not the containers will be treated as COGSA packages."); *Hayes-Leger Assoc. v. M/V Oriental Knight*, 765 F.2d 1076, 1080 (11th Cir. 1985) ("when a bill of lading discloses the number of COGSA packages in a container, the liability limitation of section 4(5) applies

12

to those packages."); *see also Mitsui & Co., Ltd. v. Amer. Export Lines, Inc.*, 636 F.2d 807 (2d Cir. 1981).

As a result, I find that the appropriate measure of COGSA packages in this case is 20,686, or 682 pallets plus 20,004 additional cartons.  Thus, the COGSA limit on Plaintiff's recovery is $10,343,000.

**IV.        Conclusion**

Viewing the facts in the light most favorable to the Plaintiffs, as non-moving party, I find that Plaintiffs have established a *prima facie* case under COGSA. Defendants have proffered evidence that they exercised due diligence or that the damage to the mangoes was due to an inherent defect - i.e. spoilage - and Plaintiffs have offered evidence of Defendants' negligence in maintaining a proper shipping environment for the mangoes.  I find that the ultimate issue of whether Defendants' negligence caused the damage or whether the damage was due to inherent defect is a triable issue of fact, and that therefore summary judgment cannot be granted as to ultimate liability.

As to the "delay damages" issue, I find that the Sea Waybill is unambiguous on its face, and that Plaintiffs have failed to raise any issue that would make parol evidence admissible or necessary.  Therefore, I will grant summary judgment in favor of Defendants as to damages due solely to delay.

Finally, as to the $500 COGSA liability limit, I find that the proper "package" is the pallets into which Plaintiffs boxed the mangoes, and not the number of containers on the carrier.  As there were a number of cartons that were not palletized, each of those excess cartons should be counted as a separate COGSA package.  Thus,

13

summary judgment in this regard will be granted in favor of Defendants insofar as damages should be computed by number of pallets, and denied to the extent that they should be calculated by the number of cartons, and not containers.  An appropriate Order follows.

# **ORDER**

**AND NOW**, this 12th day of April, 2006, after consideration of the Motion for Partial Summary Judgment regarding Plaintiffs' Claim for Damages due to Delay (Dkt. # 31 in cases 03-2360 and 03-4624 /Dkt. # 29 in case 03-2360/Dkt. #34 in case 03-2362) and any responses thereto, it is hereby **ORDERED** that the Motion is **GRANTED**.

It is further **ORDERED** that after consideration of the Motion for Partial Summary Judgment seeking to Limit Plaintiffs' Recovery to $500 per Package (Dkt. #32 in case 03-2360 and 03-4624/Dkt. # 30 in case 03-2361/Dkt. #35 in case 03-2362) and any responses thereto, the Motion is **DENIED** to the extent it seeks to limit recovery to $500 per shipping container and **GRANTED** insofar as it seeks to limit recovery to $500 per pallet.  It is further **ORDERED** that each carton not palletized shall be considered an individual COGSA package for damages calculation.

It is further **ORDERED** that after consideration of the Motion for Summary Judgment filed solely in case number 03-2361 (Dkt. # 28) and any responses thereto, the Motion is **DENIED**.

   /s/ Lawrence F. Stengel  
Judge Lawrence F. Stengel